### RICHARDSON v. SWIFT & CO.

(Circuit Court of Appeals, Seventh Circuit. October 3, 1899.)

### No. 582.

1. TRIAL—DIRECTION OF VERDICT.

The rule that, where there is doubt of the right of a party to go to the jury, the doubt should be resolved in favor of the right, is especially applicable when the issue is one of negligence, which ordinarily must be determined by inference from the circumstances proved, rather than upon direct evidence.

2. MASTER AND SERVANT—ACTION FOR PERSONAL INJURY—FAILURE TO INSTRUCT SERVANT.

Plaintiff, an employé in a packing house, was taken from his accustomed work, and directed to feed a sausage machine with chopped meat, which was shoveled into a hopper about a foot in depth above the revolving knives. As the meat did not seem to be feeding properly, the hopper being nearly full, plaintiff placed his hand upon it to press it down. The meat below had fed into the machine, leaving a crust formed across the top, which broke when plaintiff touched it, and his hand went through the space into the machine, resulting in his injury. It appeared that the formation of such crusts was of occasional occurrence, but plaintiff had no knowledge of it. *Held*, that the question whether the master was negligent in failing to inform plaintiff of such fact was not one of law, although the facts were not disputed, but, rather, of mixed law and fact, to be determined by the jury under proper instructions.

Jenkins, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

Ira C. Wood and William Garnett, Jr., for plaintiff in error.

O. W. Dyes, for defendant in error.

Before WOODS and JENKINS, Circuit Judges, and BAKER, District Judge.

WOODS, Circuit Judge. James F. Richardson, the plaintiff in error, was the plaintiff in the action, which was brought to recover for personal injury incurred while in the service of the defendant in error, Swift & Co., at Kansas City. The court directed a verdict for the defendant, and on that action error is assigned.

Summarized according to the declaration and the evidence, the case is this: The plaintiff was called away temporarily from his accustomed work, which did not expose him to the dangers of contact with machinery, and put to feeding fat pork, already so finely cut as to be in a mushy state, into the hopper of a sausage grinder, using a shovel for the purpose. Skilled or experienced men were

commonly employed to do that work, and they knew, but the plaintiff did not know, and when assigned to this work was not informed, of the occasional formation of thin crusts of meat in the hopper above the knives. The plaintiff, while at work, observed that the meat was standing without apparent movement within two inches of the top of the hopper, which was about a foot deep, and, supposing it to be packed and clogged in the narrow passage near the knives, put his left hand upon it or into it for the purpose of pushing it down. The mere crust, which was actually there, broke at his touch, and with it his hand went down, was caught and cut off, and his arm drawn in and so mangled that amputation above the elbow was necessary. Shortly after he was hurt, the plaintiff subscribed a statement which in some particulars was inconsistent with his testimony.

In directing the verdict, the court said:

"There is no claim in this case, or at least no foundation for a claim, of any defect in the grinding machines which were used there; and the only claim which is made, practically, of neglect on the part of Swift & Co., is in the fact that the plaintiff was not instructed with regard to the liability of the meat (this fine class of meat used for the Diamond B sausage) * * * to form a skim or surface. He admits that he knew of the danger which would exist if his hand got down to the worm. He placed his hand upon the crust to force it down, or work it down, whichever it might have been, and made a miscalculation. His hand dropped down or slipped down, and it was an accident for which the defendant, Swift & Co., cannot be held chargeable."

The question is a close one, but we think the case should have been left to the jury. While the plaintiff knew the location of the knives, and the danger involved in thrusting or allowing his hand to go to the bottom of the hopper, his testimony was that he knew nothing of the formation of crusts of meat in the hopper, and of the peculiar danger on that account to which he was exposed. Whether the defendant was guilty of actionable negligence in not having informed him of that phase of danger, and whether the plaintiff was himself free from contributory fault, were questions of fact, which, under proper instructions, should have been submitted to the judgment of the jury. In a recent case we have said that, when there is doubt of the right of a party to go to the jury, "the doubt should be resolved in favor of the right" (Nyback v. Lumber Co., 90 Fed. 774); and the suggestion is especially applicable when the issue is one of negligence, or the like, which ordinarily must be determined by inference from the circumstances proved, rather than upon direct evidence. We dissent from nothing to be found in the opinion in Cole v. Railway Co., 71 Wis. 114, 37 N. W. 84, and other cases cited. In no case of which we have knowledge has it been held, and we do not hold, that the mere fact that the employer requests his employé to perform a temporary work, outside of his ordinary employment, is a violation of any duty which he owes to the employé. Whether it be, depends always upon the circumstances. In the language of the opinion in the Cole Case:

"If the particular work ordered to be done is of a dangerous character, and one which requires peculiar skill in its performance, and the person directed to perform such work has not the requisite knowledge or skill for doing the work with safety, and such want of skill or knowledge is known, or might be rea-

sonably supposed to be known, to the employer, in that case the direction of the employer to do the work might be justly held to be a violation of the duty which he owes to his employé, even though the employé undertook to do the work without objection or protest on his part."

It is of little or no significance that the plaintiff in error was called away from his accustomed work. The defendant is liable on the proofs, if at all, not for failure to inform him of the ordinary dangers of the work to which he was assigned, but for the failure to warn him of the special danger, which, for the present purpose it is assumed, was of a character which a man of ordinary experience and intelligence was not likely to understand or apprehend. Whether it was of that character was for the jury to say. It is not correct to say of the plaintiff that he "knew it was dangerous to put his hand into the hopper while the worm was revolving." If the hopper had been full of meat, as it seemed to be, there would have been no necessary danger; and, if he had known of the condition or of the possibility of the condition of the meat being as it was, he could, with caution, have inserted his hand without the least probable risk. The question of the negligence of the master cannot be determined as a matter of law. There may be little or no dispute about the facts and circumstances in evidence, but whether the inference of mixed law and fact shall be one way or the other can rarely be so clear, and was not in this case so clear, as to justify a withdrawal of the question from the jury.

Much testimony was taken, and something has been said in argument, about the location of the sausage machines so near the wall that they could not have been fed from the side next to the wall, but we do not perceive actionable matter in that alone. If the plaintiff is not entitled to complain that he was not properly informed of the peculiar danger which has been considered, he is left, it would seem, without ground for saying that he did not assume whatever risk was involved in being compelled to stand on one side rather than the other of the machine. In that respect there was no concealment of fact or of probable consequences.

In respect to the amended counts of the declaration to which demurrers were sustained, if there was error, it has not been shown to be material. Under the remaining counts, or some of them, the evidence offered was admissible. The judgment below is reversed, with direction to grant a new trial.

BAKER, District Judge (concurring). When a master takes a servant from his accustomed employment and puts him to a service with which he knows he is unacquainted, and which service involves a hidden danger, which is known to the master, or which by the exercise of ordinary care he might have known, and which is unknown to the servant, it is the master's duty to warn the servant of such hidden danger. The jury would have been authorized to find that the formation of a thin surface of meat near the top of the hopper, with nothing between it and the revolving knives at the bottom of the hopper, constituted a hidden danger. The plaintiff may well have believed that the meat formed a compact mass from its surface

down to or near the knives, and that it would require considerable force to press it down upon them, and that such pressure could be applied with safety. The shape of the hopper, broad at the top and narrow at the bottom, was well calculated to induce such a belief. In my opinion, the evidence was such as to make it a question of fact for the jury whether the danger was a hidden one, whether it was known or ought to have been known by the defendant and was unknown to the plaintiff, and whether the defendant was not at fault in failing to warn the plaintiff of such hidden danger, and whether the plaintiff was without contributory fault. For these reasons, I agree that the judgment should be reversed and a new trial awarded.

JENKINS, Circuit Judge (dissenting). I am unable to concur in the judgment of the court, and for the following reasons:

1. The plaintiff in error at the time of his injury was a man of mature years and of ordinary intelligence. He had been in the service of the defendant in error in and about its works for a period of two years. He had been employed in the room where he met his injury for two months prior thereto. He knew generally the character of the machines used, although not employed in their operation. He was temporarily called from his usual work into that room to feed one of the hoppers. The revolving worm or knives in which his hand and arm were caught were, to his knowledge, situated one foot below the top of the hopper. Under such circumstances, there was no duty devolving upon the master to inform the servant of the dangers incident to the service. Reed v. Stockmeyer, 34 U. S. App. 727, 20 C. C. A. 381, and 74 Fed. 186; Logging Co. v. Schneider, 34 U. S. App. 743, 20 C. C. A. 390, and 74 Fed. 195; Cole v. Railway Co., 71 Wis. 114, 37 N. W. 84; Bailey, Mast. Liab. 220, and cases cited. I have no contention with the doctrine that the master is bound to disclose a hidden danger known to the master, and which he knows is unknown by the servant, but I cannot understand that that rule should apply here. The servant knew that it was dangerous under any circumstances to put his hand into the hopper while the worm was revolving. The supposed hidden danger was the formation of an arched crust of meat, with a space between it and the revolving knives,—formed probably by the pressure of the meat upon the converging sides of the hopper, not allowing all of the meat to be served to the revolving knives. This probably rendered it a little more dangerous to press down or stir up the meat in the hopper with the hand, but it was dangerous at any time to use the hand in pressing down or stirring up the meat. I do not understand that it is the duty of the master to warn the servant how he may do a manifestly dangerous thing with the least hazard to himself.

2. The plaintiff in error, in my judgment, was manifestly guilty of negligence contributing to his injury. He knew it was dangerous to put his hand within the hopper while the worm was revolving. It was manifestly dangerous to press down the meat with the hand during the revolutions of the worm. He should have used some implement for that purpose, and the shovel with which he supplied the meat to the hopper was a fit instrumentality. It was mere reckless-

ness to stir up or press down the meat in the hopper in close proximity to the revolving knives.

3. The case rests upon uncontroverted testimony. The circumstances and manner of the accident are detailed by the plaintiff in error. The facts are fully disclosed, and there are no inferences to be drawn. Under such circumstances, the question of liability of the master is one of law, to be determined by the court, and is beyond the province of a jury to decide. It is for them to determine dispute of fact, not the liability which the law imposes upon ascertained fact. Upon the record here, the defendant in error either did or did not owe the plaintiff in error the duty of warning. If it owed that duty, it is liable, unless the plaintiff's negligence contributed to the injury. If it did not owe that duty, it is not liable. That question of liability, I think, is one which the court should determine.