PENNSYLVANIA R. CO. v. HARTELL.

(Circuit Court of Appeals, Second Circuit. November 7, 1907.)

No. 32.

1. MASTER AND SERVANT—RESPONSIBILITY OF MASTER—VICE PRINCIPAL.

A man placed on a barge by the owner, with authority to direct her movements and to hire additional men when needed about the cargo, is the representative of the owner in respect to the performance of the latter's duty as master toward men so hired.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 422.]

2. SAME—ACTION FOR INJURY TO SERVANT—QUESTION FOR JURY.

The master of defendant's barge directed plaintiff's intestate and another, who were transfer men waiting to cart away cargo from the barge, to come on board and help with the cargo, and assigned them to work at the winch with which they had no experience. The winch became uncontrollable, and plaintiff's intestate was struck by one of the handles, and knocked overboard and drowned. The only other person on board besides the master was a boy 16 years old who operated the brake on the winch. There was evidence tending to show that deceased and his companion were given no instructions about operating the winch or the danger attending it, that an unusually heavy draft was placed thereon, and that the boy was not a competent person to be in charge of the brake. *Held*, that the question of defendant's liability was properly submitted to the jury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 1000-1067.]

3. SAME—DUTY OF MASTER.

It is the duty of a master to provide, not only suitable machinery, means and appliances, but competent fellow servants and a sufficient number to do the work in hand, and, where there are peculiar dangers incident to the business, the servant, if inexperienced, must be warned in advance of their existence.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 314, 334.]

In Error to the Circuit Court of the United States for the Southern District of New York.

Edward G. Benedict, for plaintiff in error.

Louis Frankel, for defendant in error.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

COXE, Circuit Judge. The plaintiff's intestate, Cornelius Hartell was, on September 29, 1905, in the employ of Meade's Transfer Company as a truckman. On that day he was requested by the master of the defendant's barge No. 209, which was lying at the foot of Forty-Fourth street in the Hudson river, to assist in unloading a quantity of iron bars which he (Hartell) was waiting to cart away. While standing on the barge at the winch he was struck, or forced back violently, by one of its rapidly revolving handles, thrown into the water and drowned. Negligence is imputed to the defendant in the following particulars:

First. Failure to provide competent servants and a sufficient number of them to operate the winch.

Second. In putting a load upon the winch too heavy for its capacity.

Third. Incompetency of the master of the barge in directing the work, in failing to give proper orders and in neglecting to warn Hartell of the peculiar and unusual dangers incident thereto.

Criticism was made at the trial, and is renewed in this court, that the plaintiff has not sufficiently alleged the third charge of negligence. We do not deem it important to discuss the question thus presented for the reason that the judge permitted an amendment conforming the pleadings to the proof in this regard. The defendant was in no way prejudiced, all the testimony which could be adduced was presented at the trial, there was no element of surprise and we think the granting of the amendment was clearly within the discretion of the trial judge. We are not prepared to hold that it was error to submit the cause to the jury.

Martin Bengetson and his 16 year old brother Axel, the latter but 6 months in this country, were the sole representatives of the defendant on the barge. Martin was in command and his authority was as supreme in the limited theater of his control as that of a master of one of the defendant's ferry boats over his crew. The size of the vessel is not material in fixing the limits of the defendant's responsibility. Perhaps no more comprehensive exposition of the doctrine of alter ego can be found than in the case of B. & O. Railroad v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, 37 L. Ed. 772. At page 388 of 149 U. S., at page 922 of 13 Sup. Ct. (37 L. Ed. 772), Mr. Justice Brewer says:

"In the cases of Hough v. Railway Company, 100 U. S. 213, 25 L. Ed. 612, and Northern Pacific Railroad v. Herbert, 116 U. S. 642, 6 Sup. Ct. 590, 29 L. Ed. 755, this court recognized the master's obligation to provide reasonably suitable place and machinery, and that a failure to discharge this duty exposed him to liability for injury caused thereby to the servant, and that it was immaterial how or by whom the master discharged that duty. The liability was not made to depend in any manner upon the grade of service of a co-employé, but upon the character of the act itself, and a breach of the positive obligation of the master."

Either Martin Bengetson was the defendant's representative on the barge or she was abroad in the harbor doing the defendant's work with no representative on board. He had full authority to direct her movements and to hire additional help when needed. We think the judge of the Circuit Court was correct in holding that he was the alter ego of the defendant.

There was testimony which would have warranted the jury in finding the following facts:

First. That the draft in question was unusually large and too heavy to be controlled by the men on the barge.

Second. That Hartell and Willinghoff, the latter the foreman of the transfer company, were directed by the master of the barge to assist in the unloading and were by him assigned to duty at the winch.

Third. That both Hartell and Willinghoff were engaged in wholly different occupations and, so far as appears, had no knowledge of the duties of a winchman or the dangerous character of the work.

Fourth. That they were not instructed as to the proper way to

handle the winch and no warning was given as to the liability of the handles to become uncontrollable the moment the gears were unlocked and the brake released.

Fifth. That the 16 year old boy was not a proper person to be in charge of the brake at so critical a moment.

Assuming these to be the facts, and the jury may have so found, the liability of the defendant is established.

It is the duty of the master to provide not only suitable machinery, means and appliances but competent fellow servants and a sufficient number to do the work in hand. He must also provide a reasonably safe place in which to work and where there are peculiar dangers incident to the business, the servant must be warned in advance of their existence. To place an unexperienced man at work upon a complicated and dangerous machine without instruction or warning is negligence which renders the employer liable.

In Thomas v. Cincinnati Ry. Co. (C. C.) 97 Fed. 245, Judge Taft, at page 251, says:

"It is further the personal duty of the master to avoid exposing his servants to unusual risks by giving warning to them of the perils to which they may be exposed in the use of machinery, where the servant has not the same opportunity to know the dangers of the machinery that the master has."

Again, at page 252 he quotes with approval the language of Lord Halsbury:

"That a negligent system or a negligent mode of using perfectly sound machinery may make the employer liable."

See, also, National Steel Co. v. Hore (C. C. A.) 155 Fed. 62, and cases cited.

The judgment is affirmed.