## JOHNSON v. CHICAGO, M. & ST. P. RY. CO.

(District Court, W. D. Washington, N. D. May, 1915.)

No. 54.

1. COURTS ☞365—UNITED STATES COURT—STATE LAWS AS RULE OF DECISION—ACTION FOR PERSONAL INJURY.

In actions in the United States courts for personal injuries the rule adopted by the federal courts must prevail, rather than the rule of the state court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 950, 952, 955, 969–971; Dec. Dig. ☞365.]

2. EQUITY ☞363—MOTION TO DISMISS—EFFECT AS ADMISSION.

A motion to dismiss a bill in equity admits all the allegations of the bill which are well pleaded.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 762–766, 768; Dec. Dig. ☞363.]

3. RELEASE ☞24—RIGHT TO CONTEST—RETURN OF CONSIDERATION.

Where an injured servant, who had been cared for in his employer's hospital by his employer's physician, and paid only the amounts expended by him for such care and the value of his time during that period, at his former wages, not as compensation for future damages, but under a mutual mistake that his injuries were practically cured, executed a release of all further claim, and thereafter became very much worse, and was seriously and permanently injured, he can have the release set aside without returning or offering to return the amount received therefor.

[Ed. Note.—For other cases, see Release, Cent. Dig. §§ 41–46; Dec. Dig. ☞24.]

4. CANCELLATION OF INSTRUMENTS ☞34—PROCEEDINGS—LACHES—RELEASE—RIGHT OF ACTION BARRED.

An injured servant, who signed a release more than a year prior to the expiration of the time limited by Rem. & Bal. Code Wash. § 159, for bringing an action for his injuries, and immediately thereafter became much worse, and so continued until after the expiration of the time limited, cannot then sue to have the release canceled, since it was his own laches, and not the mistake as to the extent of his injuries, which prevented the bringing of his action within the time limited.

[Ed. Note.—For other cases, see Cancellation of Instruments, Cent. Dig. §§ 49–54; Dec. Dig. ☞34.]

5. LIMITATION OF ACTIONS ☞95, 104—FRAUD—MUTUAL MISTAKE.

The statute of limitations does not begin to run against the right of action so long as the plaintiff is prevented from bringing the action by the defendant's fraud or by mutual mistake.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 337, 473, 474, 511–513; Dec. Dig. ☞95, 104.]

In Equity. Bill by Oscar L. Johnson against the Chicago, Milwaukee & St. Paul Railway Company to cancel a relief. On motion to dismiss the bill. Motion granted.

Dudley G. Wooten, E. K. Hawkins, and John N. Perkins, all of Seattle, Wash., for plaintiff.

George W. Korte, of Seattle, Wash., for defendant.

NETERER, District Judge. The bill, after stating jurisdictional facts, alleges in substance that plaintiff was injured through defend-

ant's negligence while in its employ, March 5, 1910; was treated by defendant's physicians, and after three weeks discharged as practically well; that further disorder developed because of the injury, and plaintiff was thereafter treated and operated upon by defendant's physicians; that after the operation he experienced new symptoms of disease, which are described in detail; that on or about April 29, 1912, at the instance and request of defendant, and influenced thereto solely by the representations and statements of defendant's physicians to the effect that he would gradually recover from his injuries and symptoms of disease following the same, as well as the surgical operation, plaintiff signed a written release in full of claims against the defendant for injuries received, in consideration of $2,585 paid by the defendant to the plaintiff; that such settlement was merely the cost and expense of hospital and medical and surgical treatment while being cared for by defendant, and the value of his time for said period, estimated at the wages he was earning; that subsequent to the execution of the release plaintiff rapidly grew worse and suffered a complication of ailments, fully described in the bill, which subject him to great agony of mind and body and intolerable shame and humiliation among his associates, besides rendering it impossible for him to seek or secure any kind of employment; that at the time he executed the release he had no knowledge, suspicion, or intimation that he was in danger of the conditions and symptoms described in the bill, and that defendant's physicians were either themselves ignorant of the facts, or purposely and fraudulently concealed them from plaintiff, in order to induce him to sign the release; that plaintiff brought an action for damages against defendant in the King county superior court, in which he estimated his total damages at $30,000, and deducted as a credit the sum of $2,585, the amount paid as aforesaid, which money was paid in various amounts and at different times during the period when he was under the care of defendant's physicians, and not as a lump sum by way of compensation for any future or permanent injury for which defendant might be liable; that it is utterly impossible for plaintiff to repay the $2,585, or any part thereof, at this time, or to make tender of repayment, and that, having deducted this sum from the total amount of damages claimed, his failure to repay or tender repayment should not prejudice his rights and relief as set forth in the bill; and prays that the release referred to be canceled, and plaintiff restored to all his rights in the premises. Defendant alleges in its brief, and it is not denied, that service in the lawsuit was made upon defendant December 22, 1914, and filed January 9, 1915. The law action referred to was removed to this court, where it is now pending.

Defendant has moved the court to dismiss the bill, upon the ground that the facts stated therein are insufficient to constitute a valid cause of action in equity, in that (a) the release signed by plaintiff relates to personal injuries and a satisfaction of the damage and claim for personal injuries occurring March 5, 1910, and that plaintiff's cause of action, if any, for injuries received on that date, accrued at that time, and that the law action commenced by plaintiff is barred by section 159 of Remington & Ballinger's Code of Washington, which provides

that an action for an injury by one person to the person of another must be commenced within three years from the date of the accrual of the cause of action; (b) that it appears on the face of the bill that plaintiff was paid $2,585 at the time of the execution of the release, and there is no allegation in the bill that plaintiff has returned, or made an offer to return, the money so received by him, and he still retains the fruits received under the claimed fraudulent transaction.

Defendant, in its brief, submits that it is the uniform rule of the Circuit Court of Appeals of this circuit, as well as of this court, that "a party executing a release to a railroad company for a claim for personal injuries cannot avoid it, as obtained by false and fraudulent representations, unless he first returns, or offers to return, the money received as the consideration for its execution," and cites Hill v. Northern Pacific Ry. Co., 113 Fed. 914, 51 C. C. A. 544, Price v. Connors, 146 Fed. 503, 77 C. C. A. 17, Cook v. Fidelity & Deposit Co., 167 Fed. 95, 92 C. C. A. 547, Mahr v. Railway Co., 170 Fed. 699, 96 C. C. A. 19, Standard Portland Cement Co. v. Evans, 205 Fed. 1, 125 C. C. A. 1, all decided by the Circuit Court of this circuit, and Maine Northwestern Development Co. v. Northern Commercial Co. (D. C.) 213 Fed. 103, and Columbia Digger Co. v. Rector (D. C.) 215 Fed. 619. The number and fullness of the cases spare much discussion.

Hill v. Northern Pacific Ry. Co., supra, was an action for damages for the death of plaintiff's husband through negligence of the defendant company. The defense set up a release signed by plaintiff, and plaintiff alleged fraud in obtaining the release. The reply contained no averment of tender of the money received upon the settlement, nor offered to return any of the money, but averred a willingness to deduct this amount from the total damages claimed. Judge Ross, for the court, said:

"We find it unnecessary in this case to decide whether the question of fraud leading up to and inducing the execution of such instruments may be inquired into and determined in an action at law in a federal court, for the reason that, conceding that it may be, good faith and fair dealing would require the plaintiff, as a condition precedent to the presentation and maintenance of such an issue, to return or offer to return the money received in consideration of the instruments. * * * Whatever exceptions there may be to the general rule certainly should not embrace a case like the present one, where a trial might establish that the plaintiffs have no valid claim, and at the same time leave the defendant's money in the plaintiff's pockets."

In Price v. Connors, supra, which was an action for damages for injuries sustained as the result of a gunshot wound, defendants introduced in evidence a written release, executed and acknowledged by plaintiff, who denied all knowledge of the execution. It was alleged in the reply that plaintiff was intoxicated at the time of the execution of the release, but the evidence on that question was conflicting. The trial court refused to instruct the jury that it was plaintiff's duty to restore, or offer to restore, everything of value which he received as a consideration for the release, and in the event of his failure to do so he would be bound by the release, even though the jury should believe he was so intoxicated at the time of signing it as to be incompetent of executing it. The Circuit Court (146 Fed. at page 504) said:

"We are of the opinion that the court below erred in giving the instructions complained of. The case was not one of that class wherein the court, having it within its power to fully protect the interest of the adverse party in case of rescission, might proceed to a hearing without requiring the repayment or tender of the money received in consideration of the release, illustrations of which class of cases may be found in Thackrah v. Haas, 119 U. S. 499 [7 Sup. Ct. 311, 30 L. Ed. 486], and Billings v. Smelting Co., 52 Fed. 250 [30 C. C. A. 69]. In the present case the jury might have found that the whole of the damage suffered by the plaintiff did not, in fact, amount to $500, the amount the defendants paid the plaintiff in settlement. And since the defendants put in issue all of the allegations of the complaint, it might, if the evidence justified it, have been found by the jury that the plaintiff was not entitled to recover at all."

Mahr v. Union Pacific Ry. Co., supra, involved the validity of a settlement and release of a claim for personal injuries. There was no evidence offered in support of the allegation of the amended reply that plaintiff had offered to return the money he had received in settlement of his claim, or that he had tendered the same in court. The trial court directed a verdict for the defendant, which decision was affirmed by the Circuit Court of Appeals.

Defendant has also cited several decisions of Circuit Courts of Appeals of other circuits following the rule established in this circuit. In Stephenson v. Supreme Council A. L. H. (C. C.) 130 Fed. 491, cited, it was found unnecessary to consider the question, but the court cited Hill v. Railway Co., supra. Heck v. Missouri Pac. Ry. Co. (C. C.) 147 Fed. 775, was an action for trespass on the case. Accord and satisfaction was pleaded in the nature of a written release by plaintiff, who sought to avoid it on the ground of fraud. The plea was held bad because the plaintiff had not returned or offered to return the consideration upon which the release was based. In North Chicago Street Ry. Co. v. Chicago Union Traction Co. (C. C.) 150 Fed. 612, it was held that a party desiring to rescind a contract must promptly return the consideration received.

Plaintiff contends that under the facts alleged in the complaint it is not necessary to refund the money received in consideration of the release, provided that amount is deducted from the amount claimed as damages, and cites Great Northern Ry. Co. v. Fowler, 136 Fed. 118, 69 C. C. A. 106, Pattison v. S. R. & S. Ry. Co., 55 Wash. 625, 104 Pac. 825, Sanford v. Royal Ins. Co., 11 Wash. 653, 40 Pac. 609, and Bjorklund v. Seattle Electric Co., 35 Wash. 439, 77 Pac. 727, 1 Ann. Cas. 443.

In Great Northern Ry. Co. v. Fowler, supra, which is a decision by the Circuit Court of Appeals of this circuit, it appeared that, at the time of the examination of the plaintiff by the defendant's surgeon, he called the latter's attention to a pain in his shoulder, but was informed by the surgeon that the pain was purely sympathetic, and was attributable to his fractured arm. Plaintiff thereafter signed a release in full of all claims, and it subsequently developed that his shoulder was broken and dislocated, and this action was brought to set aside the settlement. Judge Gilbert, for the court, said:

"We entertain no doubt that such a release, executed under a mutual mistake of fact so induced by the appellant, should be set aside. It is true that, where there is no misrepresentation or fraud on the part of the releasee,

a releasor cannot subsequently avoid his release on the ground that his injuries were more serious than he thought them to be, even though his opinion at the time of making the settlement may have been based upon that of a physician employed by the releasee to examine and report on the extent of his injuries. * * * But it is equally true that a mutual mistake of fact, or an innocent misrepresentation of the facts, of the releasor's injury, made by the releasee's physician, may be effective to avoid a release induced thereby."

In this case, however, the plaintiff did tender back the amount received, as Judge Gilbert, in his statement, says:

"And the appellee brought into court and tendered the repayment of $195, which he had so received, with interest thereon."

[1] The Washington court is not in harmony with the federal courts upon this issue. The rule adopted by the United States courts, however, must prevail. The Circuit Court of Appeals of this circuit, in Tweeten v. Railway Co., 210 Fed. 829, at page 830, 127 C. C. A. 378, in applying the fellow servant doctrine, stated that the rule adopted by the United States courts must control in personal injury cases, and said:

"Here is a situation which seems to demand remedial legislation; for, while the courts of the United States will follow the decisions of the courts of the state in which they are held when, in construing the state law, those decisions establish a rule of property, they must ignore them when they establish no more than a rule of liability for personal injuries."

The doctrine contended for by the plaintiff, it is asserted, is approved in Thackrah v. Haas, 119 U. S. 499, 7 Sup. Ct. 311, 30 L. Ed. 486, a case in which the transfer of shares in a corporation procured from the owner while he was so intoxicated as to be incapable of transacting business, by fraud and for a grossly inadequate consideration, was set aside, it appearing that without any fault of his he was unable to restore the consideration, and the court held provision could be made for repayment in the final decree, and at page 502, of 119 U. S., at page 312 of 7 Sup. Ct. (30 L. Ed. 486), said:

"The complaint further alleges, and the demurrer admits, that the greater part of this sum of $1,200 was retained by the bank and applied to the payment of a debt previously due to it from the plaintiff, and (it would seem before he recovered from his intoxication) the rest of that sum was applied by his wife to the payment of his small debts, and he had no means available to raise money to repay the $1,200, except the interests in the mining company which he had been induced by the defendants' fraud to make a transfer of. The plaintiff, without fault of his, being unable to repay the consideration of the fraudulent transfer, equity will not require him to do so as a condition precedent to granting him relief, but will make due provision in the final decree, for the repayment of that sum out of the property recovered."

[2, 3] In the case at bar the complainant merely says that it is impossible for him to tender or repay the money, and it is contended on the part of the defendant that such statement of a conclusion is insufficient. The motion of the defendant admits all well-pleaded allegations and statements of the bill as true. Viewing the statement of the complainant in that light, he has received, as cost and expense of hospital and medical and surgical treatment while he was cared for by the defendant, and the value of his time for said period, estimated at a value

of wages he was earning, $2,585. We have the admission that the defendant was caring for him, that it placed him in the hospital, that its physicians and surgeons treated and operated upon him, and the sum paid was for these services and expenditures which the defendant had voluntarily furnished without creating any obligation on the part of the plaintiff to pay. Taking this as true, the defendant could not be injured in any event, whatever the ultimate recovery might be, and I am inclined to the view, as against this motion, that equity does not require the defendant to pay or tender the amount received.

[4] A more serious question arises as to whether the action is not barred by limitation of time in the suit at law, and that, being barred, the court, in this proceeding, would not do an idle thing and consume its time in determining a matter which would be of no consequence, and under the agreement of the parties that this matter is to be determined it is well to dispose of it now. Section 159, Remington & Ballinger's Code of Washington, provides that an action for the injury of one person by another must be commenced within three years from the date of the accrual of the cause of action. There can be no question but that the cause of action of the plaintiff accrued on the 5th day of March, 1910, the date of his injury. There is no allegation in the bill that there was any injury received subsequent to this date; nor is there any statement that the injury thus received was aggravated by the defendant or any of its agents who treated the complainant, thereby creating a new liability. There is statement with relation to the opinion as to recovery.

"The plaintiff's ignorance of the wrong committed or of his rights with respect thereto cannot be considered in determining when the statute begins to run; his cause of action accrues, and the statute is set in motion, upon the commission of the wrongful act or the negligent omission or breach of duty by the defendant, without regard to when he became aware of it. An exception to this rule is made in cases of concealment of the cause of action or fraud on the part of the defendant, and in special cases where the ignorance of the plaintiff is due to no fault or negligence of his own, but to the peculiar circumstances of the case." 19 American & English Enc. of Law, pages 213–215.

[5] A number of authorities are cited by plaintiff to show that, where the plaintiff is prevented from bringing his action through fraud, concealment, or deceitful conduct of the defendant, or mutual mistake of the parties, the bar of the statute does not operate until the discovery of the fraud or mistake. This proposition is so fundamental that no authorities need be cited. There is no statement in the bill that would indicate any conduct on the part of the defendant which prevented the plaintiff from bringing his action prior to the time or within the period limited by law. Plaintiff must act diligently, and not delay the action beyond the time when he is cognizant of the injuries upon which he bases his right of recovery. In the case at bar, plaintiff signed a release a year prior to the expiration of the period of limitation. The bill shows on its face that immediately after signing the release plaintiff grew worse and began to suffer from the complication of diseases which he refers to in his bill. Plaintiff must be held to this knowledge, and likewise to the exercise of ordinary diligence in the prosecution of

his action, and in seeking relief from the conduct complained of; and if he fails to exercise this diligence, equity will not suspend the operation of the statute. The Circuit Court of Appeals of this circuit, in Newberry v. Wilkinson, 199 Fed. 673, at page 688, 118 C. C. A. 111, in disposing of the right of a minor who was fraudulently induced to sign away certain property rights, said:

"Reasonable attention to an affair peculiarly his own would have led plaintiff, at least soon after his arrival at age, to the possession of all the knowledge he acquired immediately prior to the bringing of the suit. But he delayed the institution of his suit until the statute of limitations had fully run against him and in favor of the surety. * * * We are of the opinion that, had the suit been seasonably instituted after the plaintiff became of age, the bar of the statute of nonclaim would not have stood in the way of his recovery, and, of course, had the suit been brought but a few days earlier, the statute of limitations * * * would not have run at all. We are impelled to the conviction, however, that the delay suffered by plaintiff after he was in possession of information challenging further inquiry on his part, and after he had arrived at legal age, * * * amounts to laches on his part, and a court of chancery will not now interpose to remove the bar of either of such statutes of limitation, nor will it afford him the relief prayed."

For the reasons stated, I think that the bill must be dismissed.