## STAR CAN OPENER CO. v. BUNKER-CLANCEY MFG. CO., et al.

### No. 8772.

Circuit Court of Appeals, Eighth Circuit.
July 18, 1930.

Rehearing Denied Aug. 29, 1930.

Stephen J. Cox, of New York City (John H. Miller and A. W. Boyken, both of San Francisco, Cal., and Francis C. Downey, of Kansas City, Mo., on the brief), for appellant.

Frank P. Barker, of Kansas City, Mo. (Arthur C. Brown and Winger, Reeder, Barker, Gumbiner & Hazard, all of Kansas City, Mo., on the brief), for appellees.

Before KENYON, BOOTH, and GARDNER, Circuit Judges.

GARDNER, Circuit Judge.

Appellant, as plaintiff in the lower court, brought suit to enjoin the alleged infringement by the defendant of patent No. 1,360,-256, issued on November 30, 1920, to Edwin Anderson and by Anderson assigned to the plaintiff. The patented device is a can opener. It is alleged that the defendants have been infringing this patent by the manufacture and sale of a can opener. The answer is the conventional answer, denying the validity of plaintiff's patent and denying infringement. The court below did not pass upon the validity of the patent, but held that there was no infringement, and dismissed the bill. From the decree of dismissal the plaintiff has appealed.

Appellees have filed a motion to dismiss the appeal on the ground that appellant has failed to comply with rule 24 of this court, in that the brief contains no sufficient statement of the case, no assignment of errors and no brief of the argument. An examination of the brief discloses that the motion is not well taken. The brief contains a statement of the case which, while not elaborate, covers the essential facts and issues. It also contains a short statement of what errors are relied upon, and while these are not numbered, they are clearly and distinctly stated. The brief discloses a good-faith attempt to comply with rule 24 of this court, and we think it substantially complies therewith.

The device covered by plaintiff's patent is described in claim 2 of the patent as follows:

"2. A can opener of the character described comprising a pair of pivotally connected handles, an advancing roller revolubly mounted at the end of one of said handles, a cutting disk revolubly mounted at the end of the opposite in opposed relation to the roller; said roller and disk being adapted to be clamped by the handles against opposite sides of an edge can flange to press the cutter through the can wall, a peripheral shoulder on the cutting disk for limiting the depth of the cut made thereby and a crank for revolving the advancing roller for the purpose set forth."

The purpose of this device is to remove tops of tin cans by cutting through the wall of the can below the flange of the top. It is recited in the patent that it relates to improvements in can openers, and more particularly "to devices of that character for opening cans by cutting the ends from the body portions by circumferential cut through the can wall." Throughout the descriptive

matter contained in the patent, it is to be observed that the function of plaintiff's device is limited to a removal of the top of the can by cutting off the top below the flange. In describing the method for using the device, it is said:

"In using the device to open a can, the handles are opened apart so that the rollers may be applied to the opposite sides of the flange of the can and they are clamped thereagainst by tightly gripping and drawing the handles together. The crank 11 is then rotated to advance the can against the cutter which enters and cuts the can wall to the depth permitted by the shoulder 5, and when the cut has been made about the can the top can be removed."

Not only is plaintiff's patent limited to a cutting off of the top of the can by cutting through the wall of the can below the flange, but it cannot be successfully used for cutting out the top of a can and is not designed for such purpose.

The accused device is designed for the purpose of opening tin cans by cutting out the top of the can, as distinguished from cutting off the top of a can through the wall of the can below the flange. The accused device can also be used for cutting off the top of some cans through the wall below the flange, as was demonstrated at the trial and also during the argument of this case. It cannot, however, be conveniently so used for that purpose and was not designed to be so used.

It appears from the directions issued by the parties to the litigation that the plaintiff in its directions limited the use of its device to cutting off the top of the can as above described, and the defendant limited the use of its device to a cutting out of the top of the can. An inspection of the two devices discloses that the cutting disk of plaintiff's device contacts the advancing roller, similar to the contact between the two parts of a pair of scissors. The corresponding parts of the accused device do not so contact, but there is a perceptible space between these parts even when brought into as close contact as their construction will permit. The expert Heinrici, testifying on behalf of the defendant, says:

"When the defendant's device is placed at right angles to the top, or rather, parallel with the top, and at right angles to the wall, for the purpose of trying to cut the wall of the can, the knob on the end of the shaft of

the knurled roller prevents the knurled roller from coming in contact with the flange of the can, thereby preventing the knurled roller from performing the function that it does in the case of plaintiff's patent. In plaintiff's device, the patent in suit, the knurled roller lies flat on the top of the can. That cannot be done with the defendant's device."

While the defendant's device can, with some difficulty, be so used as to cut off the top of the can in a manner somewhat similar to that performed by plaintiff's device, the testimony shows that it was not only not designed to be so operated, but that it could not be successfully so operated. The witness Bradford, engaged in the brokerage business, handling all kinds of specialties, including can openers, testified that he had sold a number of jobbers the defendant's device; that the purchasers had attempted to use it to cut off the top of the can by cutting through the wall under the flange, without success, and made complaint; that he then demonstrated its proper use, and the purchasers were then able to operate it successfully.

There were introduced in evidence numerous patents of can openers antedating plaintiff's patent. As they had the effect of limiting the field of invention, it seems important to refer to at least two of these patents. The Wolfer patent and the Weigel (German) patent are can-opening devices designed to cut out the top of the can. If plaintiff's device was patentable, it must be distinguished from these prior patents and must add some new or additional principle not embodied therein. As disclosed by the patent, the distinguishing feature of plaintiff's device is that it cuts off the entire top of the can by cutting through the wall below the flange ,as distinguished from cutting out the top of the can. It is only this feature that distinguishes plaintiff's device from the devices disclosed by the Wolfer and Weigel patents. The Wolfer and Weigel patents were limited to cutting through the top of the can, and it appears from the file wrapper that these patents were cited against the patent in suit by the examiner in the patent office. The teaching of these Wolfer and Weigel patents disclosed the principles used in the accused device, not only in mechanical construction, but in the manner of operation.

Plaintiff's patent was given consideration by the Circuit Court of Appeals of the Second Circuit, in Star Can Opener Co. v. Owen Dyneto Co., 16 F.(2d) 353, 355. In refer-

ring to the prior art and particularly the Wolfer and Weigel patents, that court said:

"Of these patents we first note * * * that both were not devices for removing the whole top by severing the wall of a can, but of cutting out the cover to effect the result familiar in many forms of hand can openers in current use. The Wolfer patent distinctly says that its 'rotary cutter smoothly cuts out the cover in a complete circle. A can so opened can be used again after suitably flanging over the upper edge, as no bends of any kind are formed in the cutting.' The Weigel patent, in the translation in evidence, declares as its result 'that the knife is guided along the border of the can and that the cover of the latter is thus cut out.' A study of the diagrams attached to these patents confirms the disclosure statement."

It thus appears that plaintiff's patent was sustained as against these prior art patents on the sole ground that it cut off the top of the can, whereas the device disclosed by the prior art cut out the top of the can. This same distinction differentiates the plaintiff's device from the accused device, and we are of the view that if that distinction was sufficient to sustain plaintiff's patent as against the Wolfer and Weigel patents, it should be sufficient to prevent the defendant's device from constituting an infringement of plaintiff's patent.

Plaintiff's device was again given consideration by the Circuit Court of Appeals of the Seventh Circuit, in Star Can Opener Co. v. Ace Manufacturing Co., 22 F.(2d) 977. In discussing the Wolfer and Weigel patents that court said:

"The extent to which the Wolfer and Weigel patents anticipated or restricted the field for Anderson depends somewhat upon our construction of language of the claims and the disclosures of the specifications and drawings of these two patents. They were, we think, intended to cover a can opener that cut down through the lid of the can. Basing our conclusion upon an examination of the two patents, as well as the demonstrations in open court, we conclude that: (a) Neither intended to describe an implement that would cut through the wall of the can. (b) Neither implement, constructed according to the disclosures of either patent, could be made to satisfactorily cut through the wall of the can. (c) Anderson's implement was not anticipated by the prior art."

Here, again, it is observed that the validity of plaintiff's patent was sustained as against Wolfer and Weigel, solely because those patents covered devices designed to "cut down through the lid of the can," and not to "cut through the wall of the can." In the instant case the lower court held that the defendant's device embodied the principle involved in the Wolfer and Weigel patents, as distinguished from the only novel feature supplied by plaintiff's patent, to wit, that it cut off the top of the can instead of cutting out the top of the can.

But it is contended that the Wolfer and Weigel patents were inoperative. On conflicting oral evidence the lower court held that these patents were for practical and operative utensile. We cannot say on this record that this finding of fact by the trial court is contrary to the preponderance of the evidence, and the finding of the court is entitled to great weight. Boyle v. Rousso (C. C. A.) 16 F.(2d) 666; Larson v. Crowther (C. C. A.) 26 F.(2d) 780; Nave-McCord Mercantile Co. v. Ranney (C. C. A.) 29 F. (2d) 383; Lion Oil Refining Co. v. Albritton (C. C. A.) 21 F.(2d) 280.

The lower court also found from the evidence that the accused device could not successfully be used, and was not intended to be used, to cut off the top of the can, as does plaintiff's device. The only novelty or patentable feature of plaintiff's device has, therefore, not been infringed.

It follows that the judgment of the lower court should be, and is, affirmed.